| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:12-CR-295 (3) |
| | § | |
| JAMED NASMIR COLMENARES FIERRO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Jamed Nasmir Colmenares Fierro's ("Colmenares Fierro") *pro se* Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (#606), wherein he requests compassionate release based on his medical problems. The Government filed a response in opposition to the motion (#609). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Colmenares Fierro's motion for compassionate release. Having considered the pending motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On December 12, 2012, a grand jury in the Eastern District of Texas returned an Indictment charging Colmenares Fierro and 18 codefendants in Count 1 with Conspiracy to Import 5 Kilograms or More of Cocaine and to Manufacture and Distribute 5 Kilograms or More of Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported Into the United States in violation of 21 U.S.C. § 963, and in Count 2 with Manufacturing and Distributing 5 Kilograms or More of Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported Into the United States in violation of 21 U.S.C. § 959. On April 25, 2017, Colmenares Fierro pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement. The

court granted the Government's motion to dismiss Count 2 of the Indictment. On September 15, 2017, the court sentenced Colmenares Fierro to 186 months' imprisonment, followed by a 5-year term of supervised release. Colmenares Fierro is currently housed at Correctional Institution McRae ("CI McRae"), located in McRae-Helena, Georgia. His projected release date is June 18, 2029.

## II.    Appointment of Counsel

Colmenares Fierro requests the appointment of counsel to assist him in filing a motion for compassionate release. There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Here, Colmenares Fierro is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Colmenares Fierro provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Colmenares Fierro has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Colmenares Fierro is 58 years old, and there is no indication that he is

seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Colmenares Fierro's request for appointment of counsel is denied.

III.    Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18

U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on November 16, 2020, Colmenares Fierro filed a request for compassionate release with the warden of the facility where he was housed. The following day, Warden Kathy Lane denied Colmenares Fierro's request, stating that his "concern about being potentially exposed to, or possibly contracting COVID-19 [did] not . . . warrant an early release from [his] sentence." Although Colmenares Fierro complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

B.  Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in

6

§ 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *Cooper*, 996 F.3d at 287-88, at *3; *Shkambi*, 993 F.3d at 392.  Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

1. <u>Medical Condition</u>

In the instant motion, Colmenares Fierro, age 58, contends that he is eligible for compassionate release due to his medical condition. Specifically, Colmenares Fierro claims that extraordinary and compelling circumstances exist because he has latent tuberculosis. In the request for compassionate release Colmenares Fierro sent to his warden, he also complained of suffering from hypertension, hepatitis, oral thrush, acute pharyngitis, acute bronchitis, gastro-esophageal reflux disease with esophagitis, and vertigo.

Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Colmenares Fierro's Presentence Investigation Report ("PSR"), prepared on July 6, 2017, and revised on August 7, 2017, he reported to Probation that he was in good physical health and did not suffer from any chronic illness or medical conditions.

In his motion, Colmenares Fierro argues that "his health risk from COVID-19 in light of his underlying [latent tuberculosis infection] is an extraordinary and compelling reason for . . . this [c]ourt to grant compassionate release." Colmenares Fierro attaches BOP records to his motion, which confirm that on October 14, 2017, he tested positive for latent tuberculosis

infection.[4]   Colmenares Fierro's medical records indicate that, on July 24, 2019, it was recommended that he take a 12-week course of treatment of isoniazid and rifapentine in order to prevent the worsening of his symptoms as well as the development of active tuberculosis. Although this prophylactic treatment would prevent his latent tuberculosis from worsening and developing into an active infection, he refused treatment for the infection.  Indeed, Colmenares Fierro signed a form documenting his refusal, which warned, "By refusing LTBI prophy[laxis], you risk developing active TB.  This may lead to possible death."

Colmenares Fierro was also diagnosed with unspecified acute pharyngitis on October 5, 2017.  On January 15, 2019, however, Leonor Bonnet-Engebretson, M.D., noted that the condition had been resolved.  On April 9, 2020, Colmenares Fierro was diagnosed with acute nasopharyngitis, or the "common cold."  He was prescribed an albuterol inhaler, ibuprofen, and chlorpheniramine—an antihistamine—to help with his symptoms.  BOP records reveal that, as recently as January 4, 2021, Colmenares Fierro was again suffering from a cold.

On October 18, 2017, Colmenares Fierro was diagnosed with gastro-esophageal reflux disease with esophagitis.  He is prescribed omeprazole for treatment, and, according to his 2021 BOP medical records, he still suffers from the condition.  Colmenares Fierro's records further confirm that he has vertigo, which was diagnosed on December 21, 2017.  He takes meclizine to help with his dizziness.  Colmenares Fierro also has an unspecified prostate disorder, which is treated with tamsulosin, and unspecified hemorrhoids, which are treated with hydrocortisone

---

[4] According to the CDC, tuberculosis is caused by a bacterium that attacks the body and usually focuses on the lungs.  Not everyone infected with tuberculosis bacteria becomes sick.  As a result, two tuberculosis-related conditions exist—latent tuberculosis and active tuberculosis. Unlike people with active tuberculosis, those with latent tuberculosis have no symptoms, do not feel sick, and cannot spread tuberculosis bacteria to others.  People with latent tuberculosis may develop active tuberculosis, however, if they do not receive treatment for their infection.

acetate suppositories. Colmenares Fierro's records do not reflect, however, that he has hypertension, hepatitis, oral thrush, or bronchitis. In fact, his medical records show that, on March 13, 2021, Vickie Raffield, L.P.N., noted that Colmenares Fierro's respiration was normal and that he had a normal pulse rate, and on May 25, 2021, LeWayna Williams, R.N., determined that he had an O2 rate of 99% and his blood pressure was 123/72.[5] Prior blood pressure readings of 115/81 on April 18, 2021, 105/62 on March 13, 2021, 105/68 on January 14, 2021, and 116/77 on January 8, 2021, confirm that his blood pressure is normal and that Colmenares Fierro does not have hypertension.

Colmenares Fierro is classified as a BOP medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

None of Colmenares Fierro's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Colmenares Fierro's conditions appear to be well managed with medication—at least for those treatments that

---

[5] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

he actually accepts.[6]  *See id.*  In this instance, Colmenares Fierro's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, is cleared for food service, and his current work detail is serving as an orderly.  Thus, Colmenares Fierro has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

2.    Other Reasons

Colmenares Fierro also maintains that he is at "grave risk from continued incarceration" due to prison overcrowding and there being no way to distance himself from other inmates.  He posits that the "COVID 19 pandemic is not over," is "not going away," and is "still rampaging and killing thousands of persons around the world and specially in the United States and in the B.O.P."  Nevertheless, as of July 2, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,652) at CI McRae as having confirmed positive cases of COVID-19, 33 inmates who have recovered, and 1 inmate who succumbed to the disease.  Thus,

---

[6] Colmenares Fierro's latent tuberculosis is not controlled by medication, as he refuses to take any treatment.  Under these circumstances, his declining the recommended treatment for latent tuberculosis, which currently is causing him no symptoms or acute illness, precludes him from relying on this condition as a basis for compassionate release.  *See United States v. Bethel*, No. 3:08-CR-118, 2020 WL 7321372, at *3 (E.D. Tenn. Dec. 11, 2020) (denying compassionate release where the defendant refused to comply with his latent tuberculosis treatment, explaining that the court "will not find grounds for compassionate release created solely by a defendant's refusal to comply with recommended medical care"); *see also United States v. Gardner*, No. 1:11-CR-87-HSO-JCG-1, 2021 WL 1110298, at *3 (S.D. Miss. Mar. 23, 2021) (finding that a defendant's chronic conditions of hepatitis C and tuberculosis did not amount to extraordinary and compelling reasons warranting release); *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, [the defendant] has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at [the facility where he is housed].").  Colmenares Fierro cannot be heard to complain about potential complications from his condition but refuse to take the necessary steps to treat it.

it appears that the facility where Colmenares Fierro is housed is handling the outbreak appropriately and providing adequate medical care.

Although Colmenares Fierro expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Colmenares Fierro, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus

while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, to date, the BOP has administered 199,143 doses of the COVID-19 vaccine. CI McRae is in the process of administering the vaccine to inmates and staff. Probation reports, however, that Colmenares Fierro refused the Moderna vaccine on April 12, 2021, without any suggestion that it was medically contraindicated. A medical record signed by Colmenares Fierro on April 12, 2021, confirms that he declined to receive the COVID-19 vaccine on that date. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [the defendant] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (finding that the defendant "cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"); *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (holding that because the defendant refused the COVID-19 vaccine, she "voluntarily declined to 'provide

self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *accord United States v. Braxton*, No. 4:16-CR-117, 2021 WL 1721741, at *5 (E.D. Tex. Apr. 30, 2021). Similarly, Colmenares Fierro's dramatic laments about the "grave risk" of the "rampaging" pandemic and the dangers of COVID-19 in prison fall on deaf ears when he fails to take the available measures to mitigate the risk, such as being vaccinated.

Further, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal."). In exercising its discretion, the court finds that Colmenares Fierro has failed to establish that his medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence and release him from confinement.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.  Colmenares Fierro's offense of conviction entails his participation in a large-scale, international drug-trafficking conspiracy involving the importation, manufacture, and distribution of 450 kilograms or more of cocaine intending and knowing that the cocaine would be unlawfully imported into the United States.  A joint investigation by the Drug Enforcement Administration ("DEA") and Colombian law enforcement revealed that Colmenares Fierro and a multitude of coconspirators operated a narcotics trafficking organization based in Bogota, Cali, and Medellin, Colombia, which exported multi-kilogram quantities of cocaine from South America and arranged for the transportation of the narcotics to customers in the United States and elsewhere via aircraft, watercraft, and vehicles containing hidden compartments.

According to a cooperating defendant, around September 2008, Colmenares Fierro requested that Jesus Arcadio Ceron-Munoz ("Ceron") pick up cocaine from a rural area in Colombia.  Ceron employed Diego Castano Sanchez ("Castano") to drive a truck with the cocaine.  A second cooperating defendant stated that Colmenares Fierro told Castano that he was going to pay him $250,000 in Colombian pesos per kilogram of cocaine that was transported.  On November 4, 2008, a wire tap revealed that Colmenares Fierro contacted an unidentified male and asked him to receive pesos from Mexican nationals, confirming that Colmenares Fierro's drug trafficking organization was working with Mexican drug cartels.  On November 27, 2008, a wire

tap revealed that Roberto Villegas Rojas ("Villegas") told Colmenares Fierro that he was going to pick up a cocaine shipment in Medellin. The men discussed where the cocaine was going to be stored before shipment, and Colmenares Fierro told Villegas that a truck was going to be driven to Turbo, Colombia, where the cocaine would be off-loaded and placed into an aircraft.

On November 29, 2008, Villegas was captured via wire tap telling Colmenares Fierro that there was a cocaine-laden truck in a parking lot in Itagui, Colombia, that was waiting to be picked up. Based on the call, the Colombian National Police ("CNP") established surveillance on the truck. On December 2, 2008, the CNP requested that the parking lot attendant summon the truck's owner. The truck's owner arrived and identified himself as Diego Castano Sanchez, who was a member of the drug-trafficking organization. A search of the truck revealed 286 kilograms of cocaine secreted inside the side panels of the truck.

Later that day, Colmenares Fierro was recorded via wire tap telling his brother that an unknown Mexican man held him responsible for the cocaine seizure. On March 2, 2009, law enforcement intercepted a call between Colmenares Fierro and a Mexican cartel member in which the cartel member told Colmenares Fierro that if he did not pay for the lost cocaine shipment, he would kill his brother and family members. On March 5, 2009, Colmenares Fierro called his brother, discussing how to resolve the drug debt and the fatal consequences they faced if the debt was not paid.

In sum, Colmenares Fierro stipulated that he conspired with others to import, manufacture, or distribute 450 kilograms or more of cocaine intending and knowing that the cocaine would be unlawfully imported into the United States. He served as an organizer/leader of the extensive drug-trafficking organization. In addition, Colmenares Fierro has a prior conviction in Colombia

17

for manufacturing, aggravated trafficking, and possession of narcotics for which he received a 128-month prison sentence.  In view of the nature and circumstances of his offense of conviction, his criminal history, the vast quantity of cocaine involved, and his leadership role in a sophisticated, international drug-trafficking operation, the court cannot conclude that Colmenares Fierro's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

Furthermore, granting Colmenares Fierro compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns").  In the instant case, releasing Colmenares Fierro after he has served only 58 months (approximately 32%) of his 186-month sentence would similarly minimize the

impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Colmenares Fierro's track record is similarly a poor one. In this instance, there is no reason to believe that Colmenares Fierro would not revert to engaging in organized, international drug-trafficking activities if released from prison at this time.

IV.    Conclusion

In sum, Colmenares Fierro has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Colmenares Fierro's *pro se* Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (#606) is DENIED.

SIGNED at Beaumont, Texas, this 2nd day of July, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE